THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. THE NEW YORK CENTRAL RAILROAD COMPANY, Appellant.

First Department, November 28, 1924.

Crimes — violation of Labor Law, § 161, subd. 3, providing that workmen in factory shall have one day of rest in seven and when that day is not Sunday that schedule shall be filed — charge is based on work performed in defendant's electric power house — particular work was done in part of power house used for making repairs — power house is excepted from definition of " factory " contained in Labor Law, § 2, subd. 9 — defendant was improperly convicted.

The defendant, a public service corporation, was improperly convicted of a violation of subdivision 3 of section 161 of the Labor Law, which provides that every employer operating a factory shall, except as otherwise provided, allow every person employed at least twenty-four consecutive hours of rest in any calendar week, and in case the day of rest is not Sunday, the employer must file a schedule with the Industrial Commission, since it appears that the charge is based on work performed in defendant's electric power house; that the work consisted of making repairs to machinery therein, which repairs were necessary in order to maintain a continuous flow of electric energy; that the work on which the charge is based was performed in a part of the power house used for making minor repairs and not in an independent construction or repair shop within the meaning of subdivision 9 of section 2 of the Labor Law which defines the term " factory " and excludes from the definition power houses, generating plants and other structures owned or operated by a public service corporation other than construction or repair shops. The defendant's power house is not a factory within the meaning of said subdivision 9 of section 2 and the place where the work on which the charge is based was actually performed was not an independent construction or repair shop.

APPEAL by the defendant, The New York Central Railroad Company, from a judgment of the Court of Special Sessions of the City of New York, county of Bronx, rendered on the 9th day of February, 1923, convicting it of a violation of the provisions of the Labor Law for operating on Sunday contrary to the requirement that workmen in factories shall have one day of rest in seven, and, when the day is not a Sunday, that a schedule be posted and filed showing the substituted arrangement, and against the inhibition of operation on Sunday without such posting and filing. (See Labor Law of 1921, § 161, subds. 1, 3; Penal Law, § 1275, as amd. by Laws of 1921, chap. 68; 198 N. Y. Supp. 438.)

*Alex S. Lyman* [*Jacob Aronson* of counsel], for the appellant.

*John E. McGeehan, District Attorney* [*George B. deLuca* of counsel], for the respondent.

MARTIN, J.:

The defendant railroad company maintained a power house at One Hundred and Forty-second street and East river in the county of Bronx to generate electricity for the operation of its trains running into and out of the Grand Central Terminal. The plant is operated twenty-four hours a day without interruption, and mechanics must be on hand at all times for the purpose of maintaining the dynamos and other equipment and making emergency repairs. A lathe and drill press are used in connection with such repairs.

On Sunday, March 19, 1922, an inspector of the State Department of Labor observed that one Nichols was assisting in setting a valve in a drill at this lathe. Nichols and his fellow-mechanics were engaged in repairing the power house equipment. Because of such employment the defendant was charged with a violation of the provisions of the Labor Law, of which violation it was found guilty. The defendant conceded that no schedule was posted designating the persons referred to in the information as those who were to work on Sunday, and that no schedule had been filed with the Industrial Commission, as required in certain cases by section 161, subdivisions 1 and 3, of the Labor Law.

A proper determination of the question submitted on this appeal requires a review of several sections of the Labor Law of 1921. Section 4 provides: " Work for a factory. Work shall be deemed to be done for a factory whenever it is done at any place upon the work of a factory or upon any of the materials entering into the product of the factory, whether under contract or arrangement with any person in charge of or connected with such factory directly or indirectly through one or more contractors or other third persons."

Subdivision 9 of section 2 (as amd. by Laws of 1921, chap. 489) defines the word " factory " as used in the Labor Law " ' Factory ' includes a mill, workshop or other manufacturing establishment and all buildings, sheds, structures or other places used for or in connection therewith, where one or more persons are employed at manufacturing, including making, altering, repairing, finishing, bottling, canning, cleaning or laundering any article or thing, in whole or in part, except (a) dry dock plants engaged in making repairs to ships, and (b) power houses, generating plants and other structures owned or operated by a public service corporation, other than construction or repair shops, subject to the jurisdiction of the Public Service Commission."

Section 161, subdivision 1, so far as here material, provides: " Every employer operating a factory, mercantile establishment,

or freight or passenger elevator, in any building or place shall, except as herein otherwise provided, allow every person employed in such establishment or in the care, custody or operation of any such elevator, at least twenty-four consecutive hours of rest in any calendar week. No employer shall operate such establishment or elevator on Sunday unless he shall comply with subdivision three."

Section 161, subdivision 3, provides as follows: " Before operating on Sunday, every employer shall conspicuously post on the premises a schedule containing a list of his employees permitted to work on Sunday, and designating a day of rest for each, and shall file a copy of such schedule with the Commissioner. The employer shall also promptly file with the Commissioner a copy of every change in the schedule. No employee shall be permitted to work on his designated day of rest."

On the trial the facts were clearly stated by William H. Geoghegan, who described the work being performed. He testified as follows: " Q. You said you saw this man working in a repairshop, wasn't it a power house he was working in? A. On the machinery belonging in the power house. Q. Where electric dynamos are in operation? A. Yes, sir. Q. You know that the electrical generation takes place there for the movement of trains in and out of Grand Central Terminal? A. I believe so. Q. The work that these men were doing was work in connection with the equipment or paraphernalia of that power house? A. It was. Q. You don't understand that any repair work for outside places or for paraphernalia or equipment other than for this power house was done there? A. I do not. Q. Don't you also understand that there are half a dozen or so men that are employed at the power house as general utility men to do the general repair work that is necessary in connection with the power house? A. All power houses to my knowledge have these sort of men. Q. And Nichols was one of such men, as you understand it? A. Yes, sir, he was. Q. Going about the power house and making such repairs as may be required because of a breakdown or what not during the operation of the power house? A. Yes, sir. Q. This place you described as a repair shop, isn't it a fact that it is merely a space in the balcony in the power house, where there happens to be a lathe and a few other tools? A. Yes, sir, and other power driven machinery."

W. G. Carleton also described the work in the following testimony: " Q. What current is generated there? A. The electric power for the operation of trains, the operation of trains into the Grand Central Terminal is generated there. Q. What trains are these? A. They run from Grand Central Terminal to all western points, Chicago, St. Louis, Cleveland, and others and on New Haven

division they run to Boston and other western points.    Q. Are you familiar with the duties performed by the various employees at that power house?    A. Yes, sir.    Q. And those that were per-formed there by the various employees in the month of March, 1922?    A. Yes, sir.    Q. Please testify as to the nature of the work of Kenneth Nichols and others of his class at that time? A. This station operates twenty-four hours a day throughout the year and there is certain repair work that can be done only on Sunday, on account of the loads being lighter on that day and we can spare machinery and we can spare machines that we cannot do without during the week, and on Sunday we always have certain repairs to make, at may be any place in the station, it may be in the coal conveying machine, or it may be on the turbines in the machine room, or it may be on light stuff where they would take them to the gallery, where there is a lathe and a drill press.    Q. Is that the place that the factory inspector testified about?    A. Yes, sir.    Q. Will you testify whether or not this is partitioned off or walled off in any way from the rest of the power house?    A. No, sir, it is on a balcony to one side of the main turbine room and we lift the machine from the main turbine room by a crane and swing it into that gallery.    Q. And Mr. Nichols and other mechanics who do work of the same kind, circulate throughout the power house and make the repairs which are necessary to keep the plant in operation?    A. It might be at any point in the power house. It may be on the gallery, or in the boiler room or in the turbine room.''

Although there is an exception in the statute which relieves the employer of those working in a power house, generating plant, and other structure owned or operated by a public service cor-poration other than construction or repair shops, from compliance therewith, it is contended by the State that, this being a repair shop within a power house, the defendant is guilty of a misdemeanor.

The case of *People* v. *Transit Development Co.* (178 App. Div. 288) is relied upon and appears to sustain that contention.    We are unable to agree with what was there stated in the opinion, for the reason that it is apparent that the exception in the statute was to permit emergency work to be performed in power houses furnish-ing electricity for the operation of trains and other similar purposes. The exception includes all power houses generating electricity and operated by public service corporations.    We realize the statute pro-vides that construction or repair shops of a public service corpora-tion are not exempted, but that provision has reference to separate or independent construction or repair shops and not to those doing emergency work required for the continuous operation of a power

plant and used on Sundays solely for such purpose. In this case it appears that the work that was being done was a necessary incident to the operation of the plant, and it seems to us that such work was intended to be excepted from the operation of the statute.

It is not contended that the railroad company was attempting to evade the law, by having repair work performed in the shop of a power plant, although it was unnecessary to perform such work on Sunday and although the work might be performed on any other day of the week. No such conditions were proved.

The burden was upon the People to prove a crime. By establishing the fact that men were working in a power plant on Sunday doing emergency work necessary for the continued operation of a plant generating electricity for use in the moving of trains, the People did not prove that a crime was committed. If the construction urged for the People were to be sustained, those employed in power plants on Sunday to repair the machinery of the plant, even though it had been stopped temporarily by accident, would be guilty of a crime.

The judgment of conviction should be reversed, the defendant discharged and the information dismissed.

CLARKE, P. J., SMITH, MERRELL and FINCH, JJ., concur.

Judgment reversed, defendant discharged and information dismissed. Settle order on notice.